**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Antitrust Division*

Michael M. Sawers
Assistant Deputy Director
Michael.Sawers@usdoj.gov

Mailing Address:
450 5th Street NW
Washington, DC 20530

DIRECT: 202-803-1217

March 6, 2025

Cathy Fleming
Offit Kurman
590 Madison Ave.
6th floor
New York, NY 10022

**VIA EMAIL**

    Re:    *United States v. Robert Fay*

Dear Ms. Fleming:

    This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Robert Fay (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office") and the Antitrust Division of the United States Department of Justice (the "Division," and together with this Office, the "Government"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by March 7, 2025, it will be deemed withdrawn. The terms of the Agreement are as follows:

Offense of Conviction

    1.    The Defendant agrees to waive indictment pursuant to Federal Rule of Criminal Procedure 7(b) and plead guilty to a Two Count Criminal Information charging him with knowingly entering into a conspiracy to Commit An Offense Against the United States by providing illegal kickbacks, in violation of 18 U.S.C. § 371; and providing illegal kickbacks, in violation of the 41 U.S.C. § 8702 (the Anti-Kickback Act, or "AKA"). The Defendant admits that he is, in fact, guilty of these offenses and will so advise the Court.

### Elements of the Offenses

2. The elements of the offenses to which the Defendant has agreed to plead guilty, and which the Government would prove if the case went to trial, are as follows:

#### Count One: Conspiracy to Commit Offense Against the United States by Providing Illegal Kickbacks

That at some point during the approximate time period alleged in the Information, in the District of Maryland and elsewhere:

(1) The Defendant and one or more persons entered into the unlawful kickback agreement charged in the Information;

(2) the Defendant knowingly and willfully became a member of the conspiracy;

(3) one of the members of the conspiracy knowingly committed at least one of the overt acts charged in the Information; and

(4) the overt act was committed to further some objective of the conspiracy.

#### Count Two: Anti-Kickback Act

That at some point during the approximate time period alleged in the Information, in the District of Maryland and elsewhere:

(1) The Defendant knowingly and willfully provided, attempted to provide, or offered to provide a kickback;

(2) At the time he provided, attempted to provide, or offered to provide a kickback, the recipient was either (a) a prime contractor an employee of a prime contractor; or (b) a subcontractor or an employee of a subcontractor.

### Penalties

3. The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Statute | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|
| 18 U.S.C. § 371 | 5 years | 3 years | Greater of $250,000 or twice the gain or loss from the offense | $100 |
| 41 U.S.C. § 8702 | 10 years | 3 years | Greater of $250,000 or twice the gain or loss from the offense | $100 |

a. Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

b. Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

2

  c. Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

  d. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes the Government to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

4. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

  a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, the Government, and the Court all agreed.

  b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

  c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

  d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

  e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the

charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

      f.    By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

      g.    If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

      h.    By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant recognizes that if the Defendant is not a citizen of the United States, or is a naturalized citizen, pleading guilty may have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

      i.    The Defendant has the right to have his case presented to a Grand Jury, which would decide whether there is probable cause to return an Indictment against him. By agreeing to proceed by way of Information, he is giving up that right, and he understands that the charges will be filed by the Department of Justice without a Grand Jury.

5.    The Defendant agrees to waive any defense available to him relating to the expiration of the statute of limitations. Defendant acknowledges it may be in the interest of the United States and Defendant to delay the filing of charges against Defendant and, therefore, Defendant knowingly and voluntarily waives any defense to charges filed against him that the statute of limitations has expired. That waiver is effective whether Defendant is charged by Information, Indictment, or Complaint. In the event this Agreement is termination, rescinded, voided, or breached, Defendant agrees that this paragraph is irrevocable and survives any such termination, rescission, void, or breach.

6.    The Defendant understands and agrees that in any further prosecution of him resulting from the release of the United States from its obligations under this Agreement because of the defendant's violation of this Agreement, any documents, statements, information, testimony, or evidence provided by him to attorneys or agents of the United States, federal grand juries, or courts, and any leads derived therefrom, may be used against him. In addition, the Defendant

unconditionally waives his right to challenge the use of such evidence in any such further prosecution, notwithstanding the protections of Fed. R. Evid. 410.

### Advisory Sentencing Guidelines Apply

7. The Defendant understands that the Sentencing Guidelines are advisory, not mandatory and the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

8. The Government and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto, which the Government would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

#### Count One: Conspiracy (18 U.SC. § 371)

a. The parties agree and stipulate that pursuant to U.S.S.G. §§ 2X1.1 and 2B4.1 the base offense level is **8**.

b. Pursuant to U.S.S.G. §§ 2B4.1(b)(1)(B) and 2B1.1(b)(1)(H), the parties stipulate and agree that the base offense level is increased by **14** because the conduct involved loss of more than $550,000 but less than $1,500,000.

This calculation results in an offense level for Count 1 of **22 (twenty-two)**.

#### Count Two: Anti-Kickback Act (41 U.S.C. § 8702)

c. The parties agree and stipulate that pursuant to U.S.S.G. §§ 2B4.1, the base offense level is **8**.

d. Pursuant to U.S.S.G. §§ 2B4.1(b)(1)(B) and 2B1.1(b)(1)(H), the parties stipulate and agree that the base offense level is increased by **14** because the conduct involved loss of more than $550,000 but less than $1,500,000.

This calculation results in an offense level for Count 2 of **22 (twenty-two)**.

#### Role Adjustment

e. The parties reserve the right to argue under U.S.S.G. §§ 3B1.1 and 3B1.2 as to the Defendant's role in the offense.

#### Grouping

f. Pursuant to U.S.S.G. § 3D1.2, the two counts group, since they involve substantially the same harm, resulting in a combined adjusted offense level of **22 (twenty-two)**.

9. The Government does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. The Government agrees to make a motion

5

pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of the Defendant's intention to enter a plea of guilty The Government may oppose any adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, the Government, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

10. The Government will not oppose a two-level downward adjustment if the Court determines that the Defendant meets the criteria listed in the adopted Section 4C1.1. The Defendant waives the right to seek a sentence reduction under 18 U.S.C. § 3582(c)(2) based on the adopted Section 4C1.1.

11. There is no agreement as to the Defendant's criminal history and the Defendant understands that the Defendant's criminal history could alter the Defendant's offense level. Specifically, the Defendant understands that the Defendant's criminal history could alter the final offense level if the Defendant is determined to be a career offender or if the instant offense was a part of a pattern of criminal conduct from which the Defendant derived a substantial portion of the Defendant's income.

12. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

## Obligations of the Parties

13. At the time of sentencing, the Government and the Defendant reserve the right to advocate for a reasonable sentence, period of supervised release, and/or fine considering any appropriate factors under 18 U.S.C. § 3553(a). The Government and the Defendant reserve the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that the Government or the Defendant deem relevant to sentencing.

## Waiver of Appeal

14. In exchange for the concessions made by the Government and the Defendant in this Agreement, the Government and the Defendant waive their rights to appeal as follows:

   a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statute(s) to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statute(s), to the extent that such challenges legally can be waived.

   b. The Defendant and the Government knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release).

c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from the Government or any investigating agency.

### Restitution

15. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant shall be jointly and severally liable with any codefendants the Court also orders to pay restitution for the full amount of the victim's loss. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this Agreement, and the Government may seek to be relieved of its obligations under this agreement.

### Defendant's Conduct Prior to Sentencing and Breach

16. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, the Government, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

17. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) the Government will be free from its obligations under this Agreement; (ii) the Government may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, the Government will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that the Government is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

18. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to

impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Entire Agreement

19. This letter, together with the Sealed Supplement, constitutes the complete agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between the Government and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and the Government other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

20. If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Kelly O. Hayes
United States Attorney

_____
Sean R. Delaney
Darren Gardner
Assistant United States Attorneys

Omeed Assefi
Acting Assistant Attorney General

_____
Michael Sawers
Zachary Trotter
Elizabeth French
Trial Attorneys
Antitrust Division

I have read this Agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

Date: 3/10/2025

_____
Robert Fay

8

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

Date: 3/10/2025

Cathy Fleming, Esq.

### Attachment A - Stipulation of Facts

The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office and the Division would have proved the following facts beyond a reasonable doubt. The parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.

Robert Fay ("Fay") is 59 years old and resides in the District of Maryland.

From approximately July 2013 to April 2023, Fay was employed as an Account Manager, Special Programs, at Company 1. In his role, Fay had a security clearance and regularly accessed secured government facilities. Fay used his access to identify sales opportunities and sell information technology products to United States agencies, including USG Agency 1. Fay sold products manufactured by, among others, Company 2.

Individual 1, was an on-site information technology service provider at USG Agency 1. In his role as an on-site service provider, Individual 1 was in a position to cultivate close relationships with USG Agency 1 employees who had authority over procurements. Individual 1 also often learned confidential, non-public, inside information about upcoming procurements.

In order to continue to make use of Individual 1's close relationships and access to inside information, Fay, and co-conspirators Individual 1, Individual 2 (an employee of Company 2), and Individual 3 (an employee of Company 3, a distributor of IT products) agreed to pay kickbacks to Individual 1. Fay and his co-conspirators referred to the payments as "rebates" or "margin," though in reality they were kickback payments. Fay and his co-conspirators knew of Individual 1's employment as an on-site contractor at USG Agency 1. In exchange for the kickbacks, Individual 1 gave Fay and his co-conspirators favorable treatment on procurements, including by: convincing USG Agency 1 employees to purchase products manufactured by Company 2; providing inside information about upcoming procurements to co-conspirators; and ensuring Fay and his employer, Company 1, were invited to bid on IT procurements.

At the time of the procurements, Fay knew it was important that he and his co-conspirators hide the true nature of the relationship between Fay and Individual 1. Fay and his co-conspirators knew USG Agency 1 would not have awarded Fay any contracts had USG Agency 1 known of the kickback relationship between Fay, Individual 1, and the rest of the co-conspirators. Fay also knew at the time he provided the kickback payments that such payments were prohibited and unlawful.

To coordinate the payments, Fay and Individual 1 directed Individual 3 to include a kickback for Individual 1 of a certain number of "points," which was shorthand for percentage points of margin from a contract. Once Company 3 received payment, Individual 3 ensured kickback payments were distributed to Individual 1 and his company. During the course of the scheme, Fay, Individual 2, and Individual 3 paid at least $600,000 as kickbacks to Individual 1.

In one such example, USG Agency 1 sought to procure IT products in or about September 2020. Individual 1 learned of the procurement and coordinated with Fay, Individual 2, and Individual 3 to respond to USG Agency 1's Request for Quotation. Before Fay finalized his bid, Individual 3 emailed Fay information related to Individual 1's submission so Fay would "know what the ceiling price is for the entire [order]." To coordinate the kickback amount, Fay asked

Individual 3 to allocate a percentage of margin to him and Company 1, writing that he "[w]ant[ed] to be sure there's an equitable split between [Individual 1's company] and [Fay's employer]." Fay submitted his bid to USG Agency 1 on or about September 16, 2020. Fay's bid included a kickback to Individual 1.

Date: 3/10/2025

*Robert Fay* (signature)
Robert Fay